IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GAN B, LLC,

                    Appellant,              Case No. 17 C 385

          v.                               Judge Harry D. Leinenweber

JEROME SIMS, JR.,

               Debtor-Appellee.

## MEMORANDUM OPINION AND ORDER

This case comes before the Court on Appellant Gan B, LLC's appeal from a decision of the Bankruptcy Court denying its Motion to Lift the Automatic Stay. For the reasons stated herein, the judgment of the Bankruptcy Court is affirmed and relief from the stay is denied.

## I.  BACKGROUND

### A.  Legal Background

#### 1.  *The Illinois Tax Sale Process*

The Illinois Tax Code provides that on January 1 of each year, a lien attaches to all non-exempt real property securing the payment of that year's taxes levied on that property. 35 Ill. Comp. Stat. 200/21-75. This lien has priority over all others, even those prior in time. *Ibid.* Where property taxes go unpaid, the county may bring an action to foreclose the lien and seek a judgment and order of sale in Illinois circuit court.

*Ibid.;* 35 Ill. Comp. Stat. 200/21-150 through 21-185.  If a judgment is rendered against such a property, the property owner is then given an opportunity to pay the delinquent taxes and interest up to and including one business day before the sale. 35 Ill. Comp. Stat. 200/21-165.  If the taxes go unpaid still, then the county collector may proceed with the tax sale.  35 Ill. Comp. Stat. 200/21-205.

The sale occurs at an auction in which potential buyers offer to pay the delinquent taxes due on the day of the tax sale, and they do so by bidding on the lowest amount of penalty premium that they will accept to redeem the property within the prescribed redemption period.  35 Ill. Comp. Stat. 200/21-215 (2009).  The winning bidder pays to the county the outstanding taxes on the property and receives in return a certificate of purchase.  35 Ill. Comp. Stat. 200/21-240, 21-75; *see also, Application of Rosewell,* 537 N.E.2d 762, 765 (Ill. 1989) ("When the court confirms the sale, the county's lien is extinguished, and a new lien arises by operation of law in favor of the purchaser.").  Notwithstanding elimination of the county's lien, the delinquent property owner remains personally liable to the county for taxes.  35 Ill. Comp. Stat. 200/21-440.

The original property owner has between two and three years to redeem the property, depending on whether the property is a

residence and whether the tax purchaser extends the statutory period. 35 Ill. Comp. Stat. 200/21-345, 21-250, 21-385, 21-389. Redemption requires payment of the unpaid taxes plus the penalty percentage, subsequent taxes paid by the tax purchaser plus 12 percent interest per annum, and various costs and fees permitted by statute. 35 Ill. Comp. Stat. 200/21-355. (If the tax purchaser pays delinquent taxes subsequent to the sale, then the redemption amount increases accordingly. *See, e.g., In re LaMont,* 740 F.3d 397, 400 n.2 (7th Cir. 2014).) If the property owner fails to redeem by the redemption date, the tax purchaser has the right to petition for a tax deed in the circuit court of the county where the certificate was acquired. This petition must be filed within six months of expiration of the redemption period. 35 Ill. Comp. Stat. 200/21-260(f), 21-350; *see also, In re LaMont,* 487 B.R. 488, 492 (N.D. Ill. 2012) (Leinenweber, J.), *aff'd,* 740 F.3d 397 (7th Cir. 2014). The tax purchaser has one year from the redemption date to act on its petition by applying for an order on the petition, taking the order to the county clerk to obtain a tax deed, and recording the deed. If there is a court order preventing the tax purchaser from doing so – such as the automatic stay in a bankruptcy proceeding – the one-year period is tolled during the pendency of the order. 35 Ill. Compt. Stat. 200/22-85; *In re LaMont,* 740 F.3d at 401.

Before expiration of the redemption period, the tax purchaser holds only an interest in obtaining a tax deed. It is not a future interest in property but a "non-recourse tax lien" - "a mere species of personal property [that] does not give its purchaser any equity or title to the property," only "those rights which the statutory framework creates." *LaMont,* 740 F.3d at 404-06, 409 (citations and internal quotation marks omitted) (noting that the lien amounts to a "right to payment, or alternatively, a right to an equitable remedy against the debtors' property"). Issuance of the tax deed and transfer of title to the property does not occur unless and until the property owner fails to redeem the property by the redemption date. *See, e.g., In re Bates,* 270 B.R. 455, 459 (Bankr. N.D. Ill. 2001). Therefore, a certificate of purchase has no effect on the delinquent property owner's legal or equitable title to the property before the redemption date. *In re Smith,* 614 F.3d 654, 658-59 (7th Cir. 2010); *see also, Phoenix Bond & Indem. Co. v. Pappas,* 741 N.E.2d 248, 249 (Ill. 2000) (same).

### 2. Treatment of Tax Purchasers in Bankruptcy

The holder of a certificate of purchase has the right to receive the redemption amount, which gives the tax purchaser a "claim" in the event that the property owner files for bankruptcy before expiration of the redemption period. *LaMont,*

487 B.R. at 493-95; *accord, In re Romious,* 487 B.R. 883, 885-86 (Bankr. N.D. Ill. 2013); *In re Malec,* 442 B.R. 130, 135 (Bankr. N.D. Ill. 2011); *Bates,* 270 B.R. at 463-64. When an Illinois property owner who owes delinquent taxes files for bankruptcy prior to the redemption date, "his interest in the property (including the right to redemption) passes to the bankruptcy estate, pursuant to 11 U.S.C. § 541(a), and the tax purchaser holds a lien which qualifies as a secured claim in bankruptcy." *LaMont,* 487 B.R. at 495 (citing *Bates,* 270 B.R. at 465 n.5). Debtors may use the Chapter 13 device to pay such tax debt over time because "they are not exercising their right to redeem" but instead "are using their Chapter 13 plan to pay a secured claim over time, as they are entitled to do" under 11 U.S.C. § 1322(b)(2). *In re Kasco,* 378 B.R. 207, 213 (Bankr. N.D. Ill. 2007). A debtor may satisfy its tax delinquency obligations if its Chapter 13 plan pays the county in full for the back taxes, interest, and penalty, which funds in turn rebound to the tax purchaser. *LaMont,* 487 B.R. at 497.

This does not mean that a certificate holder facing an onerous confirmed plan lacks recourse. If the property owner files for bankruptcy after the tax purchaser obtains the certificate of purchase but before issuance of a tax deed, the tax purchaser may not want to take its chances on receiving the

redemption amount or a deed to the property. *See, In re Carmona-Huerta,* No. 07 B 73065, 2009 WL 3497125, at *1 (Bankr. N.D. Ill. Oct. 23, 2009). Instead, the tax purchaser may petition the circuit court to declare the sale a "sale in error." Upon such a declaration, the county collector, on demand of the certificate holder, refunds the purchase price and other taxes paid along with certain costs and interest, and cancels the certificate insofar as it relates to the property at issue. 35 Ill. Comp. Stat. 200/21-310(b)(1),(d). The statute does not obligate the tax purchaser to seek a sale-in-error declaration within a certain period of time after learning of the debtor's bankruptcy. *See, e.g., LaMont,* 740 F.3d at 401.

### 3. *Tax Purchasers and the Automatic Stay*

Once a debtor files a petition in bankruptcy, an automatic stay takes effect and precludes certain actions against the debtor or property of his estate. 11 U.S.C. § 362. Along with providing the debtor with a breathing spell, the stay prevents creditors from cutting in line to take property that will be treated in the plan. For example, the stay bars a tax purchaser's attempt to enforce its lien by petitioning for an order to issue a tax deed. *See, e.g., LaMont,* 487 B.R. at 497. This is the case because, even after expiration of the

redemption period and until the tax deed is issued, the debtor holds title to the property.

Generally, the bankruptcy statute requires that a creditor be granted relief from the automatic stay "for cause, including the lack of adequate protection of an interest in property." 11 U.S.C. § 362(d)(1). However, a tax purchaser may not seek relief for cause based purely on the running of the redemption period, at least where that period did not expire before the bankruptcy filing and the tax purchaser's secured claim is treated in the debtor's Chapter 13 plan. *See, LaMont,* 487 B.R. at 497; *Bates,* 270 B.R. at 468. If, however, the debtor fails to "comply with the plan" treating the tax purchaser's secured claim, then the latter's equitable remedy survives and he may proceed to seek an order to issue a deed once the stay is lifted. *LaMont,* 740 F.3d at 409-410; *accord, LaMont,* 487 B.R. at 497; *Bates,* 270 B.R. at 465-66, 468-69; *but see, In re Aguirre,* 565 B.R. 646, 652-54 (N.D. Ill. 2017) (reversing the bankruptcy court's decision to lift the automatic stay after the debtors defaulted on Chapter 11 plan payments; noting that the tax purchaser had extinguished its pre-petition lien in favor of a right to payment under the plan, making the proper remedy a breach of contract action against the debtors) (citing *Matter of Penrod,* 50 F.3d 459, 463 (7th Cir. 1995)).

In sum, where a debtor files for bankruptcy after a tax sale but before the end of the redemption period, subsequent expiration of the redemption period tolls the tax purchaser's time to obtain a tax deed during the pendency of the automatic stay. But it does not affect the validity of the plan treating the purchaser's claim, nor does it necessitate modifying the stay - so long as the debtors remain compliant with the plan.

## B. Factual Background

This appeal stems from the Chapter 13 bankruptcy of Jerome Sims, Jr. ("Sims"). Sims and his wife, Tammy, had four children together, and Tammy also brought to the marriage a child from a prior union. At relevant times before her death on October 27, 2014, Tammy was the sole owner of a parcel of real estate located at 8738 South Bennett Avenue in Chicago, Illinois (the "Property"), which she had inherited from her mother. Because of non-payment of real estate taxes on the Property, Cook County held a tax sale on August 7, 2013; Gan B, LLC ("Gan") was the winning bidder. Gan holds the certificate of purchase and, in addition to paying the delinquent real estate taxes as a condition of the tax sale, continued to pay all real estate taxes owed on the Property through 2015.

After Tammy died intestate, a probate action commenced in June of 2015; Sims was appointed independent administrator.

During those proceedings, the Property was appraised at the modest value of $27,000.00. Upon taking possession of the Property and winding down Tammy's affairs, Sims became aware of the real estate tax delinquencies. As a result, on February 11, 2016, Sims filed the underlying petition for Chapter 13 bankruptcy.

On Schedule A/B of his bankruptcy petition, Sims did not claim any ownership interest in real estate. On Schedule D, Sims listed the Cook County Treasurer's Office as a secured creditor for property tax arrearages, which he calculated at $9,080.00. On Schedule J, Sims listed $900.00 in repair and maintenance expenses associated with the Property but did not declare any real estate taxes or property insurance expenses. His original bankruptcy plan mandated that his $358.00 in excess income go to pay creditors for a 60-month period, including the Cook County Treasurer.

On February 23, 2016, Sims filed a motion to extend the automatic stay and attached two documents: an affidavit and an "estimate of redemption" prepared by Cook County. In the affidavit, Sims averred that he, his wife's child, and the couple's four children together were "set to inherit a home," that delinquent real estate taxes were due, and that he was concerned about the prospect of a tax sale if the automatic stay

were not extended.   The "estimate of redemption," which was prepared before the bankruptcy filing, indicated that Gan had purchased the unpaid real estate taxes.   The Bankruptcy Court extended the automatic stay.

On April 29, 2016, Sims filed an amended Schedule D.   In the amended schedule, Sims asserted that the previously disclosed $9,080.00 in sold unpaid real estate taxes were in fact owed to the Cook County Clerk and that the Cook County Treasurer was owed $936.00 in unsold back property taxes coming due in the first months of 2016.   The amended schedule for the first time listed Gan as a creditor with respect to the sold unpaid real estate taxes due the Cook County Clerk.   That same day, Sims also amended his original plan to indicate that the Cook County Clerk would be paid for property taxes due in 2012–2014 and the Cook County Treasurer for the unpaid 2015 property taxes.   (As noted above, Gan had in fact paid all those taxes.) The amended plan was confirmed on May 16, 2016.   Gan lodged no objection.

In August 2016, Sims filed a motion in probate to extinguish the interests of his and Tammy's minor children in the Property.   On August 30, 2016, an agreed probate order transferred 100 percent of the interest in the Property to Sims.

A deed reflecting the same was filed with the Cook County Recorder of Deeds on September 8, 2016.

On August 22, 2016, the Bankruptcy Trustee presented a motion to dismiss based on Sims's failure to make plan payments. After multiple continuances of the matter, Sims presented a motion to defer certain plan arrearages. That motion indicated that payroll deductions did not commence on time and that the plan arrearages, if deferred to the end of the plan, would be paid through payroll deductions. Over Gan's objection, the Bankruptcy Court granted the motion on November 14, 2016.

About four weeks before Sims filed his bankruptcy petition, on January 19, 2016, Gan had filed a tax deed petition in Cook County circuit court. Gan's petition noted that the redemption period for the delinquent real estate taxes would expire on July 11, 2016. That day came and went without any redemption on the part of Sims. In order to proceed with obtaining a tax deed on the Property, Gan filed a motion in the Bankruptcy Court to lift the automatic stay. It argued that its interest in the Property was not adequately protected because, first, Sims had failed to pay post-petition real estate taxes, forcing Gan to pay them to protect its interest, and second, Sims was refusing to obtain and fund hazard insurance on the Property. Gan also contended that the Property was not subject to a claim in

bankruptcy – and thus not affected by the automatic stay – because Sims did not have title to the Property, only an uncertain and unvested right to inherit it, when he filed his bankruptcy petition. Sims, on the other hand, opposed lifting the stay on the basis that his failure to pay post-petition real estate taxes and maintain property insurance did not amount to inadequate protection of Gan's interest. He further claimed that his interest in the Property vested immediately upon Tammy's death – that is, before he filed for bankruptcy – such that the Property was properly included in the Chapter 13 estate.

The Bankruptcy Court declined to lift the automatic stay, holding that Gan's interest was adequately protected and that, pursuant to the Illinois Surviving Spouse Statute, Sims had an (equitable) inheritance interest in one-half of the Property at the time he filed the petition. Thus, the Property was rightly included in Sims's bankrupt estate such that Gan's secured tax claim was amenable to treatment in the confirmed bankruptcy plan. The court also noted that, to the extent Gan felt aggrieved, it could petition the circuit court to declare the tax sale a "sale in error," entitling Gan to reimbursement of funds paid plus interest. Gan then filed this appeal.

### III. __ANALYSIS__

#### A. Legal Standard

The Bankruptcy Code ("the Code") entrusts bankruptcy courts with discretion when granting a creditor relief from the automatic stay. *See,* 11 U.S.C. § 362(d)(1) (requiring the court to grant relief only after making a "for cause" finding; *Matter of Holtkamp,* 669 F.2d 505, 507 (7th Cir. 1982) ("Since the statute commits the decision of whether to lift the stay to the discretion of the bankruptcy judge, his decision may be overturned only upon a showing of abuse of discretion.") (citation omitted). The standard of review of such a ruling is governed by Bankruptcy Court Rule 8013, which mandates that this Court accept the bankruptcy court's findings of fact unless they are clearly erroneous and apply *de novo* review to issues of law. *See, e.g., Colon v. Option One Mortg. Corp.,* 319 F.3d 912, 916 (7th Cir. 2003).

#### B. Sims's Interest in the Property

Gan argues that the Bankruptcy Court's refusal to lift the automatic stay was predicated on the erroneous legal conclusion that Sims owned an interest in the Property sufficient for its inclusion in the bankrupt estate at the time of filing of his petition. Gan posits instead that Sims did not have a concrete ownership interest in the Property until after the redemption

date. Invoking undisputed facts - such as Tammy's death without a will, the Property's envelopment in probate proceedings, and Sims's acquisition of a deed to the Property only after the redemption period had run - Gan maintains that the Property was not part of Sims's bankrupt estate when he filed the petition such that the confirmed bankruptcy plan does not treat Gan's secured claim. Sims replies that the Bankruptcy Court rightly rejected this argument, as his equitable interest in inheriting the Property was included within the bankrupt estate at the time he filed his Chapter 13 petition.

Section 541(a) of the Code provides for the creation of an estate upon commencement of a case under Section 301, 302, or 303. 11 U.S.C. § 541(a). Under the statute, the estate is comprised of property "wherever located and by whomever held," provided that it falls within various enumerated categories. Two of these categories are relevant here. First, subsection (a)(1) mandates inclusion in the bankrupt estate of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The reach of this provision is broad, including "every conceivable interest of the debtor, future, nonpossessory, speculative, and derivative" that the debtor held on the petition date. *In re Yonikus,* 996 F.2d 866, 869 (7th Cir. 1993), *abrogated on other*

*grounds, Law v. Siegel,* 134 S.Ct. 1188 (2014). Second, even a property interest that the debtor did not have as of the petition date may be included in the bankrupt estate if it falls within the ambit of subsection (a)(5):

> (5) Any interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date – (A) by bequest, devise, or inheritance . . . .

11 U.S.C. § 541(a)(5). (According to Black's Law Dictionary, "inheritance" includes "[p]roperty received from an ancestor under the laws of intestacy." BLACK'S LAW DICTIONARY 903 (10th ed. 2014).) This second category of estate property is also known as "after-acquired property." While Section 541 determines the scope of the estate's property, state law usually determines the nature and extent of a debtor's interests as of the petition date. *Butner v. U.S.,* 440 U.S. 48, 54 (1979); *Peterson v. McGladney & Pullen*, *LLP,* 676 F.3d 594, 598 (7th Cir. 2012).

The parties do not disagree on the relevant facts, and Gan concedes that, had Tammy devised the Property to Sims, it would have been rightly included within the bankrupt estate at the time of the petition's filing. *Matter of Chenoweth,* 3 F.3d 1111 (7th Cir. 1993), establishes as much. There, the Seventh Circuit held that application of the after-acquired property

provision in Section 541 did not depend on the testator's will
being admitted to probate before the 180-day period expired.
The will's becoming *operative*, not its admission to probate,
activated the statutory provision, and this occurred upon the
testator's death.  "[A]ll the after-acquired statute requires is
an entitlement," which is "created by the will, and confirmed by
the probate proceeding." *Id.* at 1112-13.  Various cases in the
bankruptcy courts are in accord.  *See, e.g., In re Johnsson,* 551
B.R. 384, 405 (Bankr. N.D. Ill. 2016); *In re Elliott,* 81 B.R.
460, 462 (Bankr. N.D. Ill. 1987).

Gan seeks to distinguish *Chenoweth* and related bankruptcy
cases purely on the grounds that they all involved property
devised by will, not inherited through intestacy.  Citing no
legal authority, Gan contends that the Bankruptcy Court
committed legal error in finding "no reason to distinguish
between testator/testatrix who leaves a will and an intestate
whose property passes according to the law of intestacy." (ECF
No. 8 ("Appellant's Br.") at 21-22.)  Gan points out that five
other parties – Tammy's children – had interests in the Property
that were only fully extinguished upon probate determinations
subsequent to the redemption date.  Thus, Gan's bone of
contention is that it was legal error for the Bankruptcy Court

to treat inheritance by intestacy the same as inheritance by devise for Section 541 purposes.

Gan's argument rests on unsound bedrock. Illinois law does not distinguish between when interests in devised property vest in devisees and when interests in intestate property vest in heirs: both occur upon the decedent's death. *See, e.g., Hagney v. Lopeman,* 590 N.E.2d 466, 467 (Ill. 1992) ("Catherine Stevens died intestate on October 15, 1981. *Upon her death,* the defendant took title to 230 acres of farmland.") (emphasis added); *Glaser v. Chicago Title & Trust Co.,* 66 N.E.2d 410, 414 (Ill. 1946) (holding that property of a testator not devised by will passed to his heirs via intestacy "and was so held by them at the time of [his] death"); *Preston v. Casner,* 104 Ill. 262, 267 (1882) ("The title to the lands remained in the intestate, and of course *at his death* descended to his heirs at law.") (emphasis added); *Sturgis v. Ewing,* 18 Ill. 176, 185 (1856) ("The moment the testator or intestate dies, then *the rights of the devisees or heirs attach at once,* for the title is then already vested. . . .") (emphasis added); *Illinois v. First Bank Trust of Shelbyville,* 435 N.E.2d 709, 711 (Ill. App. 1982) ("[P]roperty vests, either by terms of a will or *by statutory intestate succession, on the death of the decedent.*") (emphasis added); *Steiner v. Lawson,* 219 N.E.2d 121, 127 (Ill. App. 1966)

("[T]he equitable titles and beneficial interests in the three parcels remained in Weil *until his intestate death, when the beneficial interests descended in equal shares to his three heirs at law. . . .*") (emphasis added).

Relatedly, probate proceedings do not create (but only vindicate) legal entitlements, and so their pendency does not affect whether an interest in property otherwise falls within a bankrupt estate. Illinois "courts have always recognized the marked distinction between the vesting of an estate and the right to enjoy possession of that estate. The latter is effected by probate proceedings, while the former is not." *In re Estate of Knight,* 533 N.E.2d 949, 951 (Ill. App. 1989); *see, Chenoweth,* 3 F.3d at 1113.

Nor is it damning, as Gan suggests, that Sims did not list on Schedule A/B of his petition any interest in real estate. In moving to extend the automatic stay shortly after filing the petition, Sims disclosed via affidavit his own inheritance interest and that of Tammy's children in the Property. He later filed amendments listing Gan as an interested party and the municipal real estate tax collectors as creditors. While the Bankruptcy Court noted that confirmation of the plan was inadvisably hasty, Gan had 14 days' notice yet did not object to the plan, did not subsequently ask the Bankruptcy Court to

revoke it pursuant to 11 U.S.C. § 1330, and did not seek leave to file a proof of claim. Gan's appeal cannot rest on such procedural *faits accomplis,* which go to the plan's validity and not the Bankruptcy Court's refusal to lift the stay for Gan to pursue a tax deed.

Ergo, the Bankruptcy Court did not commit legal error in applying the *Chenoweth* rationale to the case at bar. Upon Tammy's intestate death on October 27, 2014, Sims obtained via the Illinois Surviving Spouse Statute a vested equitable interest in 1/2 of the Property. 755 Ill. Comp. Stat. 5/2-1(a). Such an interest falls within Section 541 and was rightly included in the bankrupt estate when Sims filed his petition on February 15, 2016. *See, Chenoweth,* 3 F.3d at 1113 (holding that all the statute "requires is an entitlement"); *Yonikus,* 996 F.2d 866, 869 (noting that section (a)(1) embraces "every conceivable interest of the debtor," including "future" interests). It is thus immaterial that Sims lacked full legal title and was not the Property's sole owner until after the redemption date. Under *LaMont,* Gan's secured claim was fodder for Sims's bankruptcy plan and capable of being paid over the life of the plan.

## C.  Adequate Protection

Gan's other basis for appealing the Bankruptcy Court's denial of its Motion to Lift the Automatic Stay is a lack of adequate protection.  Gan claims that its secured claim on the Property is not adequately protected because of Sims's failure to pay post-petition real estate taxes and maintain insurance on the Property.  Gan argues that the former amounts to inadequate protection of its secured claim because a potential subsequent purchaser of the Property's outstanding tax debt would have a superior lien.  With respect to Sims's failure to carry insurance, Gan invokes the specter of catastrophic damage to the Property.  Sims ripostes that he need not pay post-petition real estate taxes or maintain property insurance because Gan has no security agreement or other contract with Sims.

The Code provides for relief from the automatic stay "for cause, including the lack of adequate protection of an interest in property." 11 U.S.C. § 362(d)(1).  Because secured creditors cannot repossess or foreclose on their collateral while the automatic stay is in effect, "adequate protection" is intended to protect, during the pendency of the bankruptcy case, against loss in value of the secured creditor's interest in property of the estate.  *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Asscs., Ltd.,* 484 U.S. 365, 370 (1988).  Section 361 of

the Code describes different forms that adequate protection may take: "a cash payment or periodic cash payments" or "an additional or replacement lien" to the extent a stay results in a decrease of the value of a creditor's interest, along with "other relief . . . as will result in the realization by [the creditor] of the indubitable equivalent" of its interest. 11 U.S.C. § 361.

First, the Court acknowledges a dearth of authority germane to Gan's argument. Gan cites exclusively cases involving a debtor's obligation to a secured mortgage-holder or under a security agreement. *See, e.g., In re Greives,* 81 B.R. 912, 969-70 (N.D. Ind. 1987) ("[T]he Debtors, *when obligated to do so by the security instruments,* must pay current taxes and keep the property properly insured.") (emphasis added); *In re Pittman,* 7 B.R. 760, 760 (S.D.N.Y. 1980) ("The mortgage obligated the Debtor, inter alia to pay the indebtedness, to maintain fire insurance for the protection of the mortgaged property and to pay the real estate taxes and water and sewer charges as assessed."); *In re El Patio Ltd.,* 6 B.R. 518, 522-23 (C.D. Cal. 1980) (requiring the debtor to make an annual payment to its lender, a bank holding a promissory note, since "accruing property taxes as a lien ahead of the Bank erodes the value of its secured interest"). Yet each of these is of dubious

relevance here. As the Seventh Circuit has recognized, a tax purchaser's claim is not even properly considered "a security *interest* because it was not created by agreement." *LaMont,* 740 F.3d at 409 (citing 11 U.S.C. § 101(51) (emphasis in original)). The Bankruptcy Court's order stressed this absence of privity between Gan and Sims – and for good reason. Unlike the mortgagee/mortgagor relationship, in which the mortgagee often insists on payment of real estate taxes and maintenance of property insurance as a condition of advancing funds to the mortgagor-debtor, Gan could not have predicated acquisition of its tax claim on Sims's (or Tammy's) performance of such obligations. This seems especially true with respect to post-petition real estate taxes, given Gan's effective assumption of the risk of tax arrearages on the Property and its payment of the Property's delinquent real estate taxes *after* the tax sale (from 2012-2015). Gan furnishes the Court with no authority or argument for treating a tax purchaser, who contracts with the taxing authority, the same as a mortgagee or other secured party in privity with the debtor.

Similarly, the Court's own search of adequate protection cases vis-à-vis real estate taxes and insurance coverage turned up only mortgagor-mortgagee and other security agreement scenarios. *See, e.g., In re Doug Wilson Ins. Agency, Inc.,* 495

B.R. 428 (Bankr. E.D. Ark. 2013) (finding cause to lift automatic stay where mortgagee was required to self-insure mortgaged property and pay its tax arrearages); *In re Biltwood Props. LLC,* 473 B.R. 70 (Bankr. M.D. Pa. 2012) (creditor holding first, second, and third mortgage liens against debtor's commercial real estate was entitled to "for cause" relief from stay based on inadequate protection where debtor failed to pay real estate taxes); *In re Mitchell,* 75 B.R. 593 (Bankr. E.D. Pa. 1987) (requiring mortgagor-debtor to remit insurance check to undersecured mortgagee or suffer lifting of automatic stay); *In re Trident Corp.,* 19 B.R. 956 (Bankr. E.D. Pa. 1982) (granting mortgagee relief from stay where mortgagor-debtor failed to pay real-estate taxes or maintain insurance coverage on subject property); *In re Graydon,* 8 B.R. 475 (Bankr. S.D. Fla. 1981) (conditioning continuance of automatic stay on debtor's maintaining insurance and paying monthly real-estate tax accruals, as required by security agreements); *In re Grundstrom,* 14 B.R. 791 (Bankr. D. Mass. 1981) (finding mortgagee of vacant, uncared-for, residential property inadequately protected based on absence of insurance; granting relief from automatic stay to pursue foreclosure action); *In Re Vincent,* 7 B.R. 866 (Bankr. M.D. Fla. 1980) (denying mortgagee's petition for relief from automatic stay where mortgagor-debtor defaulted on real-estate

tax and insurance payments, as sufficient equity cushion
provided "the indubitable equivalent" of mortgagee's property
interest); *In re Tucker,* 5 B.R. 180 (Bankr. S.D.N.Y. 1980)
(granting mortgagee for-cause relief from automatic stay based
on inadequate protection where mortgagor-debtor allowed fire and
hazard insurance to lapse and made no repairs to property).

    The Court did find one exception to the foregoing, *In re
Scott,* 449 B.R. 535 (Bankr. N.D. Ill. 2011), a case neither
party cited that nonetheless tracks Gan's real estate tax
argument. In *Scott,* an assignee of a certificate of purchase
sought relief from the automatic stay to pursue a tax deed in
state court because the debtor was behind on post-petition real
estate taxes.  The bankruptcy court granted relief from the
stay, finding inadequate protection under § 362(d)(1) based on
the debtor's inability to afford real estate taxes both pre- and
post-petition and "the great risk that another tax buyer may
intercede" "at a tax sale." *Scott,* 449 B.R. at 536.  This pre-
*LaMont* case, however, does not control the disposition here.

    First, unlike the debtor in *Scott,* Sims has indicated an
ability to pay some of the tax arrearages.  Although the
confirmed plan's Schedule J does not expressly allocate money
for tax payments, it does list $900.00 per month in property
maintenance expenses.  Sims's brief offers that the maintenance

"currently being completed with these funds can be deferred and the amount [owed] in property taxes going forward can be paid from this sum." (ECF No. 10 ("Appellee's Br.") at 7.) Although hardly a model for bankruptcy plans in the future, reallocating available funds in this way alleviates both the *Scott* court's concern about perpetual inability to pay and Gan's preoccupation with the lack of provision for tax payments on Schedule J. To the extent Gan doubts Sims's sincerity, Gan can take comfort in knowing that, if the debt is not repaid in full, its lien remains intact throughout the bankruptcy proceeding and may be enforced after the stay is lifted. *See,* 11 U.S.C. § 1325(a); *LaMont,* 740 F.3d at 409-10; *LaMont,* 487 B.R. at 498; *Bates,* 270 B.R. at 468.

Second, the risk of any tax buyer interceding to purchase post-petition real estate tax arrearages is illusory. Tax sales occurring "when the automatic stay is in effect . . . are void *ab initio*." *In re Application of Cnty. Collector for Delinquent Taxes,* 683 N.E.2d 995, 997 (Ill. App. 1997) (citing *In re Garcia,* 109 B.R. 335, 340 (N.D. Ill. 1989); *Richard v. City of Chicago,* 80 B.R. 451, 453 (N.D. Ill. 1987)). By grounding a finding of inadequate protection in the prospect of a post-petition tax sale, *Scott*'s and Gan's rationale appears unsound where, as here, the property subject to the potential tax sale

is estate property. *See,* Section III.B, *supra.* (Indeed, one of the reasons why the Bankruptcy Court extended the automatic stay in this case was Sims's consternation about a tax sale.) While a court may in some circumstances validate a tax sale by granting retroactive relief from the automatic stay, such relief "can only be granted in accordance with equitable principles," as when "a creditor did not have actual knowledge of the applicability of the automatic stay and the creditor would be unfairly prejudiced if the debtor could raise the stay as a defense." *In re Lipuma,* 167 B.R. 522, 526 (N.D. Ill. 1994). There is no indication that such circumstances are present here, and thus no appreciable risk to Gan of losing priority to a competing tax purchaser because Sims has missed post-petition tax payments.

The more cognizable risk, unmentioned by Gan and the *Scott* court, is that the county acquires a superior tax lien on post-2015 accruing tax arrearages. But, as the Bankruptcy Court noted – relying on post-*Scott* cases such as *LaMont* and *Romious* – Gan is adequately protected from any such injury by the Illinois property tax code's sale-in-error provision: it can petition the circuit court to declare its tax purchase a "sale in error" and demand refund of "the amount paid" "subsequent to the tax sale and prior to the issuance of the tax deed." 35 Ill. Comp.

Stat. 200/21-310(b)(1) & (d); *LaMont,* 740 F.3d at 401 (noting that the sale-in-error doctrine allows a tax purchaser reimbursement "for everything he paid, plus interest"). In fact, it is this "generous" provision that prompted the Clerk of Cook County to file an amicus brief in *LaMont,* imploring the Seventh Circuit not to permit tax purchasers to delay seeking a sale in error and thereby leave the county "on the hook for a significant amount of interest." *LaMont,* 740 F.3d at 410. The court noted with regret that "the risk of the county being on the hook for interest while the time to obtain a tax deed [after the redemption period] is tolled is built into the code," and that "[a]ny solution to that problem is for the courts or legislature of Illinois." *Id.* at 410-411. The sale-in-error doctrine "indicat[es] that the legislature anticipated adverse treatment of a tax purchaser's interest in bankruptcy (that is, treatment as a claim among other claims)." *Id.* at 405 n.10; *see also, LaMont,* 487 B.R. at 498; *Romious,* 487 B.R. at 886.

With respect to Sims's failure to carry insurance on the Property, the Court's search turned up no cases supporting the proposition that a tax purchaser is entitled to adequate protection in the form of the debtor's maintenance of property insurance. For many of the same reasons discussed above, it was not legal error for the Bankruptcy Court to reject Gan's attempt

to impose a property insurance obligation on Sims in favor of the proposition, enjoying recent support in this Circuit, that a tax purchaser is generally adequately protected by the sale-in-error doctrine. Fundamentally, the interest in underlying property arising from a certificate of purchase is a unique creature, enjoying only the rights granted under the statutory scheme. *LaMont,* 740 F.3d at 405 ("[T]o the extent the Illinois Appellate Court has recognized any interest in the real property, it has been limited to those rights conferred statutorily by the Illinois property tax code."). For example, one of those rights is the right to petition for appointment of a receiver to prevent waste. *See,* 35 Ill. Comp. Stat. 200/21-80; *accord, LaMont,* 740 F.3d at 406 (noting that "Illinois has given tax purchasers an unusual tax lien," which "provides the possibility of ownership in the future . . . [and] some rights to protect that interest, including the right to petition for appointment of a receiver to prevent waste"). But the statute does not go so far as to require maintenance of insurance in order to forestall any potential loss on the property.

Attempting to fit Gan's round claim into the Code's square hole, the Bankruptcy Court analyzed 11 U.S.C. § 1326(a)(4), which under certain conditions obligates a debtor to carry insurance to protect a secured creditor's interest:

> Not later than 60 days after the date of filing of a case under this chapter, a debtor retaining possession of *personal property subject to a lease or securing a claim attributable in whole or in part to the purchase price of such property* shall provide the lessor or secured creditor reasonable evidence of the maintenance of any required insurance coverage with respect to the use or ownership of such property and continue to do so for as long as the debtor retains possession of such property.

11 U.S.C. § 1326(a)(4) (emphasis added). This Court is not convinced that § 1326(a)(4) is even applicable to Gan's argument, and there would be no dice even if it were (as the Bankruptcy Court assumed). As an initial matter, the property Sims is "retaining possession of" is real estate, not Gan's personal property, even if he possesses the Property subject to Gan's secured tax lien that itself is a "species of personal property." *LaMont,* 740 F.3d at 403. Regardless, applying this insurance provision does little to advance the ball. Gan cannot be characterized as a lessor either of the Property or of the tax lien, nor does it hold a purchase-money security interest in the Property, having advanced no funds to finance its purchase. (Instead, Tammy inherited the Property from her mother, Gan purchased the delinquent taxes, and the Property then passed via intestacy to Sims.) In the best case scenario for Gan under the Code, where § 1326(a)(4) classifies Sims's possession as that of

"personal property," none of the listed circumstances mandating property insurance obtains anyway.

Because nothing in the case law, the Code, or the Illinois property tax code supports Gan's argument, the Court perceives no legal error in the Bankruptcy Court's determination that Gan is adequately protected despite Sims's failure to pay post-petition real estate taxes or carry property insurance. Obtaining a sale-in-error declaration would give Gan the "indubitable equivalent" of its interest in the Property such that it is adequately protected under 11 U.S.C. § 361.

*    *    *

Finally, the Court notes an alternative means of affirming the Bankruptcy Court's ruling. In deciding whether to grant relief from an automatic stay "for cause" – and adequate protection is the first example of "cause" the Code provides – three favors guide a court's decision. The Seventh Circuit in *Matter of Fernstrom Storage and Van Co.,* 938 F.2d 731 (7th Cir. 1991), held the following inquiries relevant to granting such relief: whether "a) [a]ny great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit, b) the hardship to the [non-bankrupt party] by maintenance of the stay considerably outweighs the hardship of the debtor,

and c) the creditor has a probability of prevailing on the merits." *Id.* at 735 (citations omitted).

Based on the undisputed facts the Bankruptcy Court found, *Fernstrom* militates in favor of denying Gan's motion. First, Gan's attempt to pursue a tax deed during the pendency of the stay would prejudice the bankrupt estate, because it would be a suit against the predominant piece of estate property. (*See,* Section III. B, *supra.*) The situation is not akin to one where a creditor seeks purely a declaration of liability as a predicate to recovering from insurers, sureties, or guarantors. *Fernstrom,* 938 F.2d at 735-36; *see, e.g., Matter of Holtkamp,* 669 F.2d 505, 508-09 (7th Cir. 1982).

Second, the hardship to Sims outweighs any hardship to Gan, because the latter may simply pursue a sale-in-error declaration if it is denied relief, whereas the former must forfeit his residence if Gan is granted relief from the stay and successfully obtains a tax deed. A sale in error would allow Gan to recoup the funds it outlaid on the Property's tax arrearages; Sims, on the other hand, has no way to recoup his investment in maintaining and repairing the Property. Also worth noting is that the situation here does not involve non-bankruptcy litigation at an "advanced stage," meaning that maintenance of the stay does not force Gan to write off

significant litigation expenses.  *Fernstrom,* 938 F.2d at 736-37;
*see, e.g., In re Sonnax Indus.,* 907 F.2d 1280, 1287 (2d Cir.
1990) (declining to lift the stay in part because "the
litigation in state court has not progressed even to the
discovery stage").

Even if, under the third *Fernstrom* factor, Gan has a
greater probability of prevailing in its petition for a tax deed
than Sims or the bankrupt estate does in opposing, the first two
factors nonetheless significantly favor maintaining the stay.
Therefore, as an alternative to affirming the Bankruptcy Court's
finding of adequate protection, the Court upholds its denial of
Gan's requested "for cause" relief based on *Fernstrom* balancing.

## IV.  CONCLUSION

The Bankruptcy Court committed no legal error in finding
that the Property comprised part of the bankrupt estate at the
time Sims filed his Chapter 13 petition, because he inherited an
equitable interest in the Property upon the prior intestate
death of his wife.  Gan thus has a secured claim on the Property
capable of treatment in bankruptcy over the life of the
confirmed plan, and Sims's filing of the bankruptcy petition
after the tax sale but before the redemption date effectively
tolled the redemption period (for as long as Sims complies with
the plan).  The Bankruptcy Court similarly committed no legal

error in finding Gan's interest in the Property adequately protected despite Sims's failure to pay post-petition real estate taxes and maintain insurance on the Property.

For the reasons stated herein, the Court affirms the decision of the Bankruptcy Court denying Gan's Motion to Lift the Automatic Stay.

**IT IS SO ORDERED.**

_____
     Harry D. Leinenweber, Judge
     United States District Court

Dated: June 13, 2017